## H. S. ROBERTS v. COMM'RS OF POTTAWATOMIE CO.

1. MEDICAL SERVICES TO PRISONERS; *Liability of County.* A county is not bound to pay a physician for medical services rendered by him in attending on prisoners confined in the county jail unless such services were authorized by the county board.

*Error from Pottawatomie District Court.*

ROBERTS, a physician, presented his bill to the board of commissioners of Pottawatomie county for $62 for medical services and medicines furnished (at the request of the sheriff) to two prisoners in the jail of the county. The commissioners allowed him $10, and refused to allow him the balance of his bill. *Roberts* appealed, and filed a petition to which the *Board of County Commissioners* demurred. The case was heard on the demurrer at the February Term 1872 of the district court, and judgment given for the defendants; and *Roberts* now brings the case here on error.

*H. G. Barner*, for plaintiff in error:

The right of appeal is given to *any person* aggrieved by the decision of the board of commissioners, (Gen. Stat., ch. 25, § 30,) and this provision is made with direct reference to accounts presented against the county; hence if plaintiff's claim was such as the board of commissioners was bound to pass upon, then it was and is such an one as the district court was bound *to hear* on appeal. The subject-matter of this suit was an account for medical services and medicine furnished by plaintiff to pauper prisoners in the county jail, duly committed thereto.

We think the case fully provided for by § 331 of the criminal code. True, the language of that section is, the board of county commissioners "*may* allow a moderate compensation for medical attendance," etc.; and this word "may" is the cause of all the litigation in this case. We submit that the word "may" is used in our statutes in all cases where the thing provided for depends upon the happening

of some event that may or may not take place; and the word
when thus used, after the happening of such contingency has
in similar cases in other states and countries always been
construed the same as the word *must*. This is the construc-
tion given to it in all the law dictionaries; and must have
been known and contemplated by the framers of our statute.
And the same construction was given to it by the early
English reports, and continued down to the present time:
Salkeld, 609; Carthews, 293; Skinner, 370; and is the
same adopted in this country: 3 Atkins Ch., 166; Sedg. Stat.
and Const. Law, 338. The statute is intended for authority
to the jailer to employ medical assistance whenever the *neces-
sity for it* arises; and hence it was the duty of the commis-
sioners to pass upon the claim; and as they did so, and did
not allow the whole of it, it was the plaintiff's right to
appeal and the duty of the district court to hear *and try* that
appeal. It is not a case nor like a case where the statute
provides for the payment of "such an amount as may be
allowed by the board of commissioners;" and whether the
allowance made by the commissioners is the proper moderate
one or not, is a question of fact to be determined by proof
on trial on the appeal.

*R. S. Hick*, for defendants in error:

1. The petition does not state facts sufficient to constitute
a cause of action. The plaintiff performed the services, to
recover pay for which this action is brought, at the instance
of the sheriff, and was not employed by the defendants, or by
their authority. "When a prisoner is committed in a crim-
inal action, the county board shall allow the sheriff his reason-
able charges for supplying such prisoner." Gen. Stat., ch.
53, § 10. But the petition does not allege that the prisoners
were "committed in a criminal action," or that the plaintiff
was the sheriff. Sec. 331 of the criminal code, (which is the
only one that affords even the suspicion of a legal foundation
for the plaintiff's claim,) cannot be held to give the blacksmith
who forges the irons, the physician who performs medical

services, the persons who furnish fuel and bedding, and the menial who attends a prisoner, at the instance of the sheriff, each a right to prosecute and recover a claim against the board of county commissioners for his services. As to the physician, the prisoner may be more able than the county to pay him. It is optional with the board of commissioners whether they will make the allowance or not. They may make it if they are "satisfied of the necessity of so doing," and cannot be required to make it unless they are so satisfied, or to make any greater allowance than they are satisfied the necessity requires. They may allow a "moderate compensation." In this case the complaint seems to be that they have complied too literally with the law; but they are the exclusive judges, and having, as shown by the petition, allowed what they considered a "moderate allowance," that would seem to be an end of the case.

2. No appeal lies from the board of county commissioners in such a case as this. *Linton v. Comm'rs of Linn Co.*, 7 Kas., 79.

The opinion of the court was delivered by

VALENTINE, J.: This action was for medical services rendered by the plaintiff to two prisoners confined in the county jail of Pottawatomie county. The plaintiff (Roberts) filed his petition. The defendant (the county) demurred thereto, on the ground that the petition did not state facts sufficient to constitute a cause of action. The district court sustained the demurrer, and the plaintiff now complains in this court of such ruling. The petition was certainly not very profuse or prodigal in its statement of facts. It did not state whether the said prisoners were confined in the county jail in a civil or in a criminal action; it did not state that the medical services of the plaintiff were necessary; nor that the prisoners themselves were unable to pay for said services; nor that the plaintiff was employed by the county commissioners; nor that the compensation which the county commissioners allowed him (which was ten dollars) was not a reasonable or sufficient

compensation, or a "moderate compensation" as mentioned in the statute.

The plaintiff claims compensation for his services under § 331 of the criminal code. Said section reads as follows:

"SEC. 331. Whenever the tribunal transacting county business of any county in which the offender shall have committed any crime, for which he is imprisoned, may be satisfied of the necessity of so doing, they may make an allowance for ironing the prisoner, and may allow a moderate compensation for medical services, fuel, bedding and menial attendance for any prisoner, which shall be paid out of the county treasury."

Now for the purposes of this argument we will suppose that said prisoners were confined in the county jail for a criminal offense; that they were sick, and needed medical aid; that they were poor, and unable to pay for such aid; and that the ten dollars paid to the plaintiff was not a sufficient compensation for the plaintiff's services, and still we think the plaintiff could not recover on said petition. One important defect still remains in the petition. It does not show that the county commissioners, "the tribunal transacting county business," (Comp. Laws, 409, §§ 3, 5, 15; Gen. Stat., 254, §§ 3, 5, 16,) ever authorized such services. It is true that under § 331 of the criminal code (above quoted,) the county commissioners "may allow a moderate compensation for medical services" rendered without authority from them, but they are not bound to do so. If a physician chooses in such a case to volunteer his services without authority from the county board, even though he should be requested so to do by the sheriff of the county, as in this case, or by some other person, he must trust to the discretion and the liberality of the county board for compensation. A county is not bound to pay a physician for medical services rendered by him in attending on prisoners confined in the county jail unless such services were authorized by the county board. The judgment of the court below is affirmed.

All the Justices concurring.